RECEIVED
IN ALEXANDRIA, LA.

JUL 3 1 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| WILLIAM O. SCALLION | CIVIL ACTION NO. 08-2001 |
|---|---|
| VERSUS | JUDGE TRIMBLE |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, ET AL | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two motions for summary judgment[1] filed by defendant Hartford Life and Accident Insurance Company ("Hartford") and a motion for summary judgment[2] filed by plaintiff. Also before the court is a motion in limine and alternative motion to strike[3] filed by Hartford. For the reasons expressed herein below, the court finds that Hartford's motion in limine and motions for summary judgment should be GRANTED and that plaintiff's motion for summary judgment should be DENIED.

I.     BACKGROUND

### Relevant Facts

Plaintiff suffered a laceration to his left cornea on November 13, 2007 while vacationing in Vicksburg, Mississippi. Plaintiff was taken to the emergency room in Vicksburg and later transferred to University Hospital in Jackson, Mississippi. While at University Hospital, plaintiff underwent surgery to suture his laceration. Plaintiff remained in the hospital for three days following his injury and was discharged on November 16, 2007. On or about December 6, 2007, plaintiff submitted a claim under two accidental death and dismemberment policies: one issued

---

[1] R. 27, 32.
[2] R. 28.
[3] R. 47.

1

by defendant Hartford through the AFL-CIO and another issued by Hartford through former defendant City Bank & Trust Company.[4] Plaintiff's claim against the Hartford policy asserts that his injury resulted in the permanent and irrevocable loss of vision in his left eye. Along with his claim form, plaintiff also submitted his discharge paperwork from University Hospital, a detailed bill of hospital charges and an Attending Physician Statement ("APS") completed by Dr. Niles Mungan, his treating physician at University Hospital.[5]

Hartford denied plaintiff's claim by letter dated January 23, 2008, explaining that the "documentation submitted in support of your claim does not establish that you are eligible for Accidental Dismemberment benefits" because, under the terms of the policy, his vision in his left eye was not irrevocably lost.[6] Hartford further explained that this determination was based on Dr. Mungan's opinion, offered in the APS of December 6, 2007, that plaintiff's sight may improve with further surgery.[7] Hartford's denial letter also informed plaintiff of his right to appeal the denial.[8]

Plaintiff appealed Hartford's denial of benefits in February of 2008 by submitting copies of the documents originally provided in his initial claim and, additionally, an Accidental Dismemberment Physician's Statement ("ADPS") completed by Dr. Mungan and dated January 21, 2008.[9] In response to this appeal, on February 14, 2008, Hartford sent a written request to Dr. Mungan for plaintiff's medical records and for a completed APS.[10] On the same day, Hartford notified plaintiff that it was investigating the claim and had requested medical records

---

[4] The motions currently before the court pertain only to the AFL-CIO policy.
[5] Administrative Record (R. 26-2) at Bates Nos. 000169-000178.
[6] Id. at Bates Nos. 000163-000165.
[7] Id.
[8] Id.
[9] Id. at Bates Nos. 000155-000161.
[10] Id. at Bates No. 000153.

and an APS from Dr. Mungan.[11] On April 4, 2008 Hartford renewed its request to Dr. Mungan for these documents, as it had received no response to its February 14, 2008 request.[12] On the same day, Hartford informed plaintiff in writing of the fact that it still had not received the requested documents and that a new request had been made, also enclosing copies of the requests sent to Dr. Mungan.[13] Having still not received the requested documents on April 17, 2008, Hartford sent a third request to Dr. Mungan, which read in part as follows.

> Enclosed is a copy of the Attending Physician Statement
> completed by you dated 12/6/07. You indicate that Mr. Scallion's
> loss of vision in his left eye is "NOT IRRECOVERABLE."
> You indicate that his sight "might be improved with further surgery."
>
> Also enclosed is a copy of your office notes from 1/21/08.
> You indicate that Mr. Scallion's vision in his left eye is
> permanent, irreparable loss of all vision.
>
> Please answer the following questions:
>
> 1. Please indicate best corrected visual acuity, Left Eye: _____
> 2. Is this loss of sight (due to injury) irrecoverable? _____ [14]

On April 29, 2008 Hartford informed plaintiff in writing that it was awaiting a response to its April 17th request from Dr. Mungan.[15] Shortly thereafter, Hartford received a written response from Dr. Mungan, dated April 29, 2008, in which Dr. Mungan explained that his opinion, stated in the ADPS, that plaintiff's loss of vision was permanent and irreparable "must have been an error." Dr. Mungan's response also answered Hartford's posed questions as follows:

---

[11] Administrative record at Bates No. 000154.
[12] Id. at Bates No. 000152.
[13] Id. at Bates No. 000151.
[14] Id. at Bates No. 000138.
[15] Id. at Bates No. 000121.

3

> 1. Please indicate best corrected visual acuity, Left Eye? <u>Light perception</u>
> 2. Is this loss of sight (due to injury) irrecoverable? <u>No, it might be improved with further surgery</u>.[16]

By letter dated July 9, 2008, Hartford informed plaintiff that his appeal was denied and that its prior determination as to his eligibility for benefits would stand.[17]

Plaintiff filed the above captioned suit in November of 2008 in the Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana.[18] Plaintiff's state court petition prayed for compensatory damages, statutory penalties, costs, attorney fees and other just reliefs. This suit was timely removed by Hartford in December of 2008.

Plaintiff filed a motion to remand on the basis that this court lacked subject matter jurisdiction, supplemental jurisdiction and/or diversity jurisdiction. This motion was denied by order dated February 12, 2009, wherein the court found that City Bank and Trust Company was improperly joined and should be dismissed from suit and, additionally, that the AFL-CIO policy was governed by ERISA and, therefore, this court had jurisdiction over the claims regarding both policies.[19] Thereafter, City Bank and Trust Company was voluntarily dismissed from this suit.[20] Plaintiff reserved all rights concerning his claim on the City Bank policy against Hartford.[21]

Hartford filed a motion for summary judgment as to the AFL-CIO plan on the issue of discretionary authority[22] and another motion for summary judgment on the issue of abuse of discretion[23] as plan administrator and the issue of ERISA preemption of Louisiana law claims.

---

[16] Administrative record at Bates No. 000107.
[17] Id. at Bates No. 000088.
[18] R. 1-1.
[19] R. 13.
[20] R. 25.
[21] Id.
[22] R. 27.
[23] R. 32.

Plaintiff filed a motion for summary judgment on the issue of abuse of discretion.[24] Finally, Hartford filed a motion in limine seeking to prevent certain medical records filed by plaintiff from being considered by this court on the basis that these documents were not a part of the administrative record before Hartford during its benefits determination in this case.[25]

B.   **Applicable Standard**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[26]

A material fact is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[27] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[28]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to come forward with specific facts showing a genuine factual issue for trial.[29] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[30] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that

---

[24] R. 28.
[25] R. 47.
[26] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).
[27] Anderson, supra, at 248.
[28] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th cir. 2000), citing Anderson, supra, at 248.
[29] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[30] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

it would be admissible at trial.[31] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party fails to demonstrate the absence of material fact questions or if the non-moving party succeeds in demonstrating the existence of such fact questions, the motion for summary judgment must be denied.

## II. ANALYSIS

### A. Hartford's motion for summary judgment concerning discretionary authority and preemption of state law claims[32]

In its first motion for summary judgment, Hartford asserts that the language of the AFL-CIO policy at issue in this case clearly vests it with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the AFL-CIO policy. Hartford cites the following language from the Summary Plan Description ("SPD"):[33]

> 1) <u>General</u>: The following information together with the information contained in the Certificate of Insurance ("Certificate") to which this supplement is attached constitute the Summary Plan Description required by the Employee Retirement Income Security Act of 1974. The benefits described in your Certificate are provided under a group insurance policy ("Policy") issued by the Hartford Life and Accident Insurance Company ("Insurance Company" or "The Hartford") and are subject to the Policy's terms and conditions. The policy is incorporated into, and forms part of, the Plan. The plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy.

---
[31] Fed. R. Civ. P. Art 43(a); <u>Roucher v. Traders & General Ins. Co.</u>, 235 F.2d 423 (5th Cir. 1956).
[32] R. 27.
[33] Administrative record at Bates Nos. 000212-216.

6

> The plan has granted the Insurance Company full discretion
> and authority to determine eligibility for benefits and to
> construe and interpret all terms and provisions of the Policy.

This language is echoed in the subsection concerning "claim procedures." Hartford asserts that this language is clear and unambiguous and vests Hartford with full discretionary authority.

Plaintiff argues that it is unclear whether Hartford has discretionary authority under the policy because the only provision cited by Hartford for this premise is found within the SPD and the Incorporation Provision of the Certificate of Insurance does not incorporate the SPD into the policy itself. We reject this argument for several reasons.

First, although plaintiff has filed its "Statement of Completeness"[34] in which it argues that Hartford has not filed a complete copy of the master policy issued to the policyholder, AFL-CIO, plaintiff neither attaches such a copy to the filing, nor cites the court any provision within the master policy which creates ambiguity as to discretionary authority. The court notes that the SPD clearly advises plan participants that all insurance contracts, collective bargaining agreements, annual reports and updated SPDs are available for inspection or copy through the Plan Administrator or AGIA. Summary judgment jurisprudence clearly indicates that hinting at hypothetical questions of fact is insufficient to avoid summary judgment.[35] Moreover, applicable Fifth Circuit jurisprudence suggests that plaintiff may not fail to provide evidence in support of his claim to the claim fiduciary charged with discretion and then argue that the record is insufficient.[36] Finally, 29 U.S.C. § 1024(b)(4), ERISA's disclosure provision, provides plaintiff

---

[34] R. 41.
[35] S.E.C. v. Recile, 10 F.3d 1093 (5th Cir. 1993).
[36] Vega v. National Life Ins. Services, Inc., 188 F.3d 287 (5th Cir. 1999). Although the court is aware that the Vega court was considering facts in which the claimant failed to provide medical records to the claim fiduciary and not, as here, insurance policy provisions which he believed supported his claim, we find the same reasoning applicable

the right to the documents which he complains are missing. Plaintiff has not availed himself of that right.

Second, the SPD is not meant to be a part of the actual policy of insurance. SPDs are mandated by ERISA[37] and are so required in order to provide employee insureds with a "shorter simplified version of the plan itself" in hopes of "allowing them to understand what would otherwise be a complex, somewhat incomprehensible document."[38] It is well settled that, in the event of a conflict or ambiguity between provisions of the policy and provisions of the SPD, the provisions of the SPD govern and are binding so that the policy underlying the SPD mandate is upheld.[39] Thus, even if plaintiff were to actually point to contradictions in the master policy and the SPD, this court would be constrained to apply the SPD provision.

Plaintiff next argues that the SPD provisions are, themselves, contradictory because, for example, the SPD requires that a participant contact the Plan Administrator in order to initiate a claim for benefits. Plaintiff asserts that, because the SPD states that the Plan Administrator is "another entity" besides Hartford, ambiguity is created as to who has authority over claims. The court does not agree. The SPD explains that the "Trustees of the Fund serve as Plan Administrator."[40] The SPD also clearly instructs that claims are initiated by contacting the Plan Administrator and getting a claims form and then submitting that completed form to the Insurance Company (Hartford).[41] We find nothing ambiguous or contradictory in these instructions.

---

here, given the policy underlying ERISA, which is to promote resolution of claims at the administrative level. Further, given that plaintiff filed the instant suit, we find that plaintiff must carry the burden to come forward with evidence in support of his claim, particularly when faced with a motion for summary judgment. Finally, we are reinforced in our belief given the availability of the evidence at issue.

[37] Employee Retirement Income Security Act of 1974, § 102(a), 29 U.S.C.A. § 1022(a).
[38] Washington v. Murphy Oil USA, Inc., 497 F.3d 453, 456 (5th Cir. 2007).
[39] Hansen v. Continental Ins. Co., 940 F.2d 971 (5ht Cir. 1991).
[40] Administrative Record at Bates No. 000212.
[41] Id. at 000214.

The court also rejects plaintiff's argument that the SPD is ambiguous as to whether or not Hartford is vested with discretionary authority over benefits determinations under the policy. The SPD clearly explains that Hartford has been vested with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the policy."[42]

Given our reasoning above, the court finds that plaintiff has failed to demonstrate the existence of a genuine issue of material fact concerning whether or not Hartford is vested with discretionary authority as the claims fiduciary for the policy at issue in this case. Accordingly, we find that Hartford's motion for summary judgment should be granted in that we find Hartford is vested with full discretionary authority as the claims fiduciary.

Based on plaintiff's assertion of ambiguity as to Hartford's discretionary authority in this case, plaintiff also argues that this court must review Hartford's denial of benefits de novo because the AFL-CIO plan at issue does not expressly grant Hartford discretionary authority. Alternatively, plaintiff argues that, should the court find that Hartford has discretionary authority, we should apply a modified abuse of discretion standard which takes into account the conflict of interest inherent in Hartford's role as both claims administrator and insurer in this case.

A district court reviews a denial of benefits under an ERISA-governed plan de novo unless the plan vests the administrator with discretionary authority to determine benefits eligibility or to construe the terms of the plan.[43] If the plan grants such discretionary authority to the administrator, the district court must review the determinations of the administrator for abuse

---

[42] Id. at 000212-000216.
[43] Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

of discretion.⁴⁴ Such standard is synonymous with the arbitrary and capricious standard.⁴⁵ In applying the abuse of discretion standard, the court must determine whether or not the administrative record contains substantial evidence to support the administrator's decision.⁴⁶ Substantial evidence is that which "a reasonable mind might accept as sufficient to support a conclusion."⁴⁷ Benefits entitlement decisions made by a self-interested claims administrator are entitled to "a modicum less deference" under the abuse of discretion standard due to the inherent conflict of interest which accompanies the dual roles of both claims administrator and insurer.⁴⁸

As above, this court finds that the plan expressly grants Hartford full discretionary authority to make benefits determinations and to construe the terms of the plan. Accordingly, we also find that the abuse of discretion standard is appropriately applied in this case. Finally, given that Hartford is both the claims administrator and the insurer of the plan at issue,⁴⁹ a conflict of interest is inherent and must be considered as a factor in determining whether or not Hartford's benefits denial was arbitrary and/or capricious.⁵⁰ Thus, we reject plaintiff's argument that Hartford's denial of benefits should be reviewed de novo.

Hartford's motion next asserts that ERISA preempts all state law claims for breach and for penalties and attorney fees under the Louisiana Insurance Code asserted by plaintiff in this case because the AFL-CIO plan is an ERISA-governed plan and ERISA expressly preempts state law claims which "relate to" an ERISA-governed plan. The court agrees. To the extent that

---

⁴⁴ Id., Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533, 537-38 (5ᵗʰ Cir. 2007).
⁴⁵ Wade, 493 F.3d 533 at 540-41 (citing Aboul-Fetouh v. Employee Benefits Comm., 245 F.3d 465, 472 (5ᵗʰ Cir. 2001).
⁴⁶ High v. E-Systems, Inc., 459 F.3d 573, 576 (5ᵗʰ Cir. 2006) (citing Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 273 (5ᵗʰ Cir. 2004)).
⁴⁷ Id.
⁴⁸ Vega, supra, 188 F.3d at 296.
⁴⁹ R. 30 at p. 12.
⁵⁰ Firestone, supra, 489 U.S. at 115.

plaintiff seeks recovery of plan benefits under Louisiana law, such claims are expressly preempted by 29 U.S.C. § 1144(a) which provides that

> [t]he provisions of this subchapeter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

To the extent that plaintiff's complaint seeks penalties, attorney fees and litigation costs under former La. R.S. 22:657, now La. R.S. 22:1892, those claims are also preempted by ERISA.[51] Accordingly, the court finds that Hartford's motion for summary judgment should be granted insofar as it seeks dismissal of plaintiff's state law claims on the basis of ERISA preemption.

### B. Plaintiff's motion for summary judgment on the merits of his denied claim for benefits[52]

Plaintiff's motion seeks summary judgment reversing Hartford's denial of benefits and awarding such benefits from November 13, 2007, along with attorney fees, court costs and interest. Plaintiff asserts that no genuine issue of material fact exists concerning the insufficiency of the medical evidence in the administrative record and that, as such, the benefits denial by Hartford was an abuse of discretion.

Plaintiff's motion makes two (2) general allegations: (1) that the administrative record does not contain substantial evidence which supports Hartford's decision to deny benefits in this case, and (2) that the scant administrative record evidences Hartford's bad faith administration of plaintiff's claim.

---

[51] Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); House v. American United Life Ins. Co., 499 F.3d 443 (5th Cir. 2007)
[52] R. 28.

11

Plaintiff's motion asserts that the administrative record is totally lacking in medical record evidence and that Hartford's denial was, therefore, not based on substantial evidence as required by applicable jurisprudence. Specifically, plaintiff argues that, although Hartford informed plaintiff that it was requesting medical records from Dr. Mungan, no such records were received and, as a result, the only evidence upon which Hartford relied was the APS. Although the court would prefer a more thorough administrative record, we do not find that the absence of medical records in this particular record mandates an abuse of discretion finding in this case. It is well settled that this court's review of a plan administrator's denial of benefits is limited to only that evidence before the plan administrator at the time of the determination.[53] It also well settled that a plaintiff may not fail to submit evidence in support of his claim to the plan administrator and then complain, after the filing of suit, that the record is incomplete or inadequate. The claimant has a duty to provide such evidence to the administrator at a point, before the filing of suit, when such evidence may be fairly considered.[54] Allowing plaintiff to prevail on the argument that his treating physician never sent medical records and, therefore, the record is insufficient, would undermine the policy behind ERISA, which is to encourage the resolution of claims at the administrative level.

Although, as above, we find the administrative record to be limited in certain respects, we do find that the documents contained therein do constitute substantial evidence in support of Hartford's denial of benefits. Specifically, the court finds that the APS and response to Hartford's April 17, 2008 letter provide Dr. Mungan's medical opinion as to whether or not plaintiff's sight may be improved with further surgery. As cited by Hartford, the only available ruling on this issue by the U.S. Fifth Circuit Court of Appeals indicates that the Fifth Circuit

---

[53] Vega, supra, 188 F.3d at 299.
[54] Id. at 300.

follows the vast majority of courts which have found that a loss of sight is not irrecoverable if the claimant's sight is "capable of being recovered by surgery or any other artificial means."[55] Accordingly, we find that the documentation of plaintiff's treating physician's opinion sufficient evidence that plaintiff's sight is not irrecoverable such as is required for the payment of benefits under the policy at issue.

Plaintiff's motion also asserts that Hartford's correspondence to plaintiff, contained in the administrative record, evidences bad faith on Hartford's part. Specifically, plaintiff alleges that Hartford's bad faith is evidenced by its mischaracterization of his claim as one for death benefits in its January 23, 2008 denial letter.[56] Although this apparent error is unfortunate, we do not find that what amounts to a clerical error in this case evidences bad faith by Hartford. Moreover, the letter containing the error was not sent to plaintiff, but instead, to AGIA, Inc., the third party administrator under the terms of the plan. The administrative record before the court shows that by letter to plaintiff, also dated January 23, 2008, Hartford correctly describes his claim as one for accidental dismemberment benefits.[57]

The next eight (8) pages of plaintiff's motion contain excerpts from correspondence from Hartford concerning his claim. Plaintiff's motion argues that this correspondence demonstrates that Hartford mishandled plaintiff's claim and was, to some extent, dishonest in its representations as to the status of its review of plaintiff's claim, all because Hartford was in a rush to deny the claim. The court disagrees.

Plaintiff asserts that Hartford, after denying his claim three (3) weeks earlier, informed him by letter of February 14, 2008 that it was now in receipt of his claim, was requesting the treating physician's medical records and would begin the review process once those records were

---

[55] Fairley v. Prudential Ins. Co. of America, 40 F.3d 385, *3 (5th Cir. 1994).
[56] Administrative record at Bates No. 000166.
[57] Id. at Bates Nos. 000163-165.

13

received.[58] How, asks plaintiff, can Hartford's denial of benefits be anything other than arbitrary when this letter evidences that it denied the claim before investigating it? This seeming puzzle is explained by the evidence before the court which demonstrates that, after receiving Hartford's January 23rd letter, plaintiff filed what was construed as an appeal, containing copies of documents previously submitted and a document entitled "Accidental Dismemberment Physician's Statement," which Hartford asserts is not a document they use and was supplied by another unknown party.[59] These documents were received by Hartford on February 14, 2009. A copy of the envelope, addressed in what appears to be plaintiff's handwriting, is included in the administrative record.[60] The evidence before the court clearly demonstrates that Hartford received plaintiff's appeal on February 14, 2009 and promptly informed him that the appeal was being processed. Plaintiff's attempt to construe this letter as evidence that Hartford believed it was reviewing plaintiff's claim for the first time after having summarily denied such claim borders on frivolousness.

Plaintiff's motion attempts many other such arguments, each citing correspondence in support of bad faith allegations. The court has carefully reviewed the administrative record in this case and, as detailed above, finds that the timeline of correspondence argued by plaintiff is a misrepresentation.

Hartford's initial denial letter states "the documentation submitted in support of your claims does not establish that you are eligible for...benefits."[61] The letter further states that this decision was based on

> Policy language and all documents contained in the claim
> file, viewed as a whole, including the following specific information:

---

[58] Id. at Bates No. 000154.
[59] Id. at Bates Nos. 000141-000150.
[60] Id. at Bates No. 000150.
[61] Id. at Bates Nos. 000163-165.

14

(1) Accidental Dismemberment – Loss of Sight Claim Form;
(2) Attending Physician's Statement.

Thus, we reject plaintiff's argument that Hartford falsely represented to plaintiff that it initially denied his claim based on medical record evidence. Hartford expressly stated that it relied on the claim form and APS and does not state that it relied on medical records from Dr. Mungan which it had not yet received.

Plaintiff's motion next argues that Hartford abused its discretion by not requesting medical records and, instead, confining its inquiries to Dr. Mungan to a narrow question: is plaintiff's loss of sight permanent and irreparable? Again, the court disagrees. Whether or not loss of sight is irreparable does not depend on the type of surgery necessary and, therefore, any further opinion by Dr. Mungan as to what surgery or surgeries he may have been referring to is irrelevant to the determination of coverage in this case. Moreover, once Hartford received what appeared to be conflicting answers to this question by Dr. Mungan, it wrote to him asking for clarification.[62] Thus, we reject plaintiff's argument that his treating physician was not allowed to explain any inconsistencies in the record. Dr. Mungan was afforded that opportunity and affirmed that plaintiff's sight may be improved with further surgeries.[63]

Given our reasoning above, this court finds that plaintiff's motion for summary judgment on the merits of his claim for accidental dismemberment benefits under the AFL-CIO plan should be denied.

---

[62] Id. at Bates No. 000138.
[63] Id. at Bates No. 000107.

## C. Hartford's motion for summary judgment on the merits of plaintiff's claim for benefits[64]

Hartford's second motion for summary judgment seeks a judgment from this court affirming its denial of plaintiff's claim for accidental dismemberment insurance benefits under the AFL-CIO plan at issue. As cited above, Hartford's decision is entitled to less deference than would be shown to a disinterested claims administrator because of Hartford's role as both fiduciary and administrator.

As explained above, the court has carefully examined the administrative record and finds that it contains substantial evidence supporting Hartford's denial of benefits in this case. Although Hartford requested medical records which it did not receive, we find that the evidence which was before the administrator at the time of the determination supports Hartford's conclusion that further treatment options were available to plaintiff. Accordingly, we do not find that Hartford's denial of benefits was an abuse of its discretion.

Given our findings, Hartford's motion for summary judgment will be granted in all respects, as this court does not find that genuine issues of material fact remain as to whether or not Hartford abused its discretion.

## D. Hartford's motion in limine and alternative motion to strike[65]

As discussed above, this court is limited to an examination of only such administrative record evidence as was before the administrator at the time the benefits determination was made.[66] Plaintiff did not attempt to provide Hartford with any medical record evidence which might support his claim in this case. Instead, plaintiff argues that the fact that Hartford did not

---

[64] R. 32.
[65] R. 47.
[66] Vega, supra, 188 F.3d at 299.

receive these records before issuing its denial is evidence of bad faith. The court disagrees and reiterates that it is contrary to the goals of ERISA for a court to allow a plaintiff to come forward with new medical evidence which could have been provided to the administrator for consideration before the filing of a suit. Hartford's motion in limine is granted as to all medical record evidence which was not previously included in the administrative record.

Plaintiff also seeks consideration of documents which it argues form a part of the AFL-CIO plan, but were not made a part of the administrative record. Hartford opposes the inclusion of these documents. In Hartford's reply to plaintiff's opposition to its first motion for summary judgment, Hartford explains that the documents submitted form the entire policy. The court agrees. Moreover, plaintiff has again failed to demonstrate why this information was not contested prior to suit and what support for plaintiff's claim these documents provide.

Accordingly, the court finds that Hartford's motion in limine should be granted. The court did not consider these documents in its determination of whether or not Hartford abused its discretion in this case.

### III. CONCLUSION

The court has carefully reviewed the law and argument advanced by the parties and finds that no genuine issues of material fact remain concerning Hartford's full discretionary authority to make benefits determinations under the AFL-CIO plan at issue in this case. Additionally, the court finds that no genuine issues of material fact remain as to whether or not Hartford's denial of plaintiff's claim for accidental dismemberment benefits under that policy was an abuse of discretion. As explained above, we find that the denial is supported by substantial evidence in the administrative record. Finally, the court finds that Hartford's motion in limine, seeking to

exclude evidence outside the administrative record from our consideration, should be granted under applicable jurisprudence.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
July 30, 2009

*[signature]*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE